The next case is 2010-1019, Henry Jung, this is the PTO. The case is 2010-1019, Henry Jung. Mr. Stern, any time you're ready. Good morning, your honors. Robert Stern for inventors Jung and Wood.  The board wrongly characterized Jung's contested prima facie anticipation issue. I have great difficulty after reading the briefs in understanding what it is that I'm supposed to decide. As I read your reply brief, do you agree that if we decide that there was a prima facie case made by the examiner and the board, that you don't get a second chance on a remand to rebut that, correct? That's correct, your honor. So what are we arguing about? Your honor, we're arguing about the prima facie case of anticipation and putting... But you didn't raise in your opening brief any challenge to the board's determination with respect to claims scope for the anticipation issue with respect to the earlier patent. Your honor, we, you know... They didn't come until the reply brief, right? No, your honor. From the beginning of this case, we... No, no, not the beginning of the case, the opening brief. Yes. I don't read the opening brief as challenging the merits of the rejection, but rather the procedure. Yes, that's correct, your honor. We are not challenging... Indeed, you deliberately, as I read that brief, stayed away from the merits, arguing that your position all along is just a challenge to the prima facie of rejection. That's correct, your honor. That's not your character, I imagine. Yes. We are here today... But where does that leave us, addressing the question that Judge Dyke presented at the outset? Your reply, you seem to concede that if we agree that a prima facie rejection has been established, that's the end of it. That's correct, your honor. If the prima facie case of anticipation has been established in a legally sufficient manner, it's our position that that's the end of it. But if the prima facie case of anticipation has not been established, then we would like the court to remand the case to the board with instructions to remand the case to the examiner on this issue. So you're asking, basically you're asking us to do an interlocutory review, procedural interlocutory review. Is that correct? Your honor... You want two bites of the apple. No, your honor, we do not want two bites of the apple, because as I said to Judge Dyke, if we were wrong in our contesting the prima facie case of anticipation, then we lose. So we don't want a second bite of the apple. What we want is that the prima facie case be honored as a legal requirement for the examination process, which it was not done here. In order for the prima facie case to be a real legal requirement for anticipation, we submit to this court that there has to be independent review by the board, which never occurred here. The board acted as a super examiner and basically did the rejection, what they thought was in a proper manner for the examiner who had never provided a legally sufficient prima facie case. This is, in our opinion, a case of first impression. You mean that the board adds additional reasoning to what the examiner did that that's improper? Is that the contention? Well, your honor, we believe that the prima facie case requirement lies with the examiner during prosecution. And the reason for this is that the whole purpose for the prima facie case is to create a burden of production that is in compliance with section 102. I really don't understand what the issue is here. You're not challenging the merits of the rejection. That's correct. You're not asking for a second bite of the apple. That's correct. And so what did the board do wrong? I'm just not understanding. The board did not act as an independent review body. The examiner, as we point out in our brief, is in a conflicted position. The examiner is acting on behalf of the government, but the examiner is also ruling on whether or not the prima facie case has been legally established, when clearly it was not done here on the record. Why is this notion of the patent office establishing a prima facie case anything other than a way of framing the requirement of the patent office to give the applicant sufficient notice of the basis for a rejection? Your Honor, the notice is part of the prima facie case, but the prima facie case of this court's jurisprudence of Enri Piasecki, Enri Epstein, and Enri Oedeker-Show is based on 102. And it's based on the requirement of section 102 that says that an inventor is entitled to a patent unless the patent office can establish certain invalidity rejections. Here, the patent office skipped over that. Well, let's be clear and let's be precise, because the patent office is operating under 35 U.S.C. 132, Notice of Rejections. Whenever on examination any claim for a patent is rejected or any objection or requirement made, the director shall notify the applicant thereof, stating reasons for the rejection, together with information and references as may be useful. This is the basis for the examiner's issuance of a notice in the form of a rejection, correct? That's correct, Your Honor. And that's the basis for this so-called prima facie showing. That's what the patent office must do, is place the applicant on some reasonable notice as to what the basis might be to refuse to grant a patent, because I agree with you that the patent law is made clear that an applicant is entitled to a patent unless. But there's nothing in any statutory permission that sets forth any different kind of prima facie requirement, correct? Your Honor, it's the case law of this court that breathed life and meaning, if you will, into the prima facie case requirement with respect to 103. But it all stems essentially from Section 132 as the ground for the patent office's posture in examining applications. No, Your Honor, we respectfully disagree, because 132 provides the applicant with a sufficient written rejection, but that begs the issue. The issue is that the prima facie case requirement has to satisfy the 102 requirement, which means there needs to be an on-the-record showing of a broadest reasonable claim construction, and there also has to be a record showing that there's evidence bridging the facial differences between that reasonable claim construction and the purported anticipatory reference, which here was this Kalinitsky controller. But Your Honor, let's assume for the moment that the examiner has a reference A, and applies that reference against the applicant, and says that the reference shows parts Y, X, and Z, and because of that showing, the application is denied. Is that sufficient? No, Your Honor. What more is required? What is required, in our opinion, and as we said earlier, this is a case to first impression, we believe, is that there needs to be a reasonable on-the-record claim construction along the lines of the In Re Suit Code case. By the examiner. By the examiner, during the prosecution process, not by the board, and there has to be record evidence bridging the facial differences between this reasonably construed claim and the purported anticipatory reference. And so what's missing here, a claim construction by the examiner? And that there is no evidence filling the gaps between the reasonably constructed claim and the anticipatory reference. So what you're saying is that the board can't say anything that the examiner didn't already say? Your Honor, we took the position, or the risky position, albeit, of taking... Is my statement correct? I'm sorry, Your Honor. You're saying that the prima facie case has to be judged solely by what the examiner says? Yes, Your Honor. The board can't substitute new reasoning for what the examiner said, and the problem here is that the board didn't confine itself to what the examiner said. Is that a fair statement, Your Honor? Yes, Your Honor. The board needs... we want the independent review of the prima facie case requirement in order for the prima facie case requirement to have any real practical effect. Here, it has no practical effect. The patent office has conflated the notice requirement into the prima facie case and basically reduced it to just mere notice, and we submit that that's not the law and it shouldn't be the law. The whole burden of production starts with the examiner. The examiner has to create a written record that's sufficient for the applicant to know what to respond to. Where have we said that the board can't go beyond the examiner's reasoning? I understand there's a problem if there's a new ground or rejection, okay, but that's not what happened here. It's the same arc. It's the same issue of anticipation. So what case has ruled that the board can't expand the reasoning of the examiner or change the reasoning of the examiner with respect to that particular reference? Well, we would submit, Your Honor, that the cases of Enri Piasecki and Enri Oedeker deal with the fact that the prima facie case requirement lies with the examiner and not with the PTO. And the reason we take that position is the very practical reality of what we're arguing here today. Applicants, at the beginning of the prosecution process, have the unfettered ability to produce evidence on the record. They have the ability to amend claims. They have the ability to make argument. As the prosecution continues through the final rejection and then to the board, their ability to submit evidence, argument, and make amendments is very reduced to the point where by the time they are before the board they can do none of this. If the board can act as a super examiner, like it did here, and then say that it's not a new ground of rejection, we've essentially What's to prevent the applicant from making new arguments with respect to the same prior art references when he gets before the board? Because under Rule 182, Your Honor, they have to petition the board to get that evidence in. No, I'm talking about evidence. New argument. Well, Your Honor, in order to overcome anticipation, oftentimes you need to provide record evidence in the form of 132 declarations, for example. What we're saying is that we're not asking for a second bite at the apple. We're asking for the Patent Office to provide a legally sufficient initial rejection that satisfies the prima facie case. What they did here, Your Honor, was they took this Kalnitzky reference, they pointed to it as if we're supposed to know what they're doing, and then they construed the claim terms in light of the Kalnitzky prior art. They never construed the claims in light of our specification. That cannot be the law. Before you sit down, let me just ask you quickly one question. Should every appellant, in your view, be entitled to plenary review of the prima facie question before reaching the merits? Is that your contention? Two answers, Your Honor. Yes, but it's very risky for appellants to do that, and I would submit to you that we are the rare exception to the rule. We are not opening floodgates here, Your Honor. I reserve my time. May it please the Court. Good morning, Your Honors. Patent prosecution is an interactive process. The examiner goes first. Under Section 132, the examiner has an obligation to put the applicant on notice as to precisely what the rejection is, and to do so well enough so that the applicant knows how to respond. What degree of specificity must the examiner provide the applicant? If there is a reference, let's call it reference A, and the examiner says that parts X, Y, Z all apply against the claim and doesn't explain how they apply, it just says they apply against the claim and it's anticipated fully. Well, the examiner has to point specifically enough to the exact part of the reference the examiner thinks is within the scope of the claims, and must do so clearly enough so that the applicant knows what to do, so that the applicant isn't shooting arrows in the dark, as Inrei Otaker refers to. Does the examiner need to specify the breadth of the claim at that point? Well, the breadth of the claim under the examiner's interpretation is implicit in the initial rejection, and we see that here, where Jung came back and didn't argue that he didn't understand the examiner's rejection, but he made an argument on the merits of the rejection itself. The argument that he's making is that the board changed the rejection, not to come up with new prior art or something like that, but that they came up with a claim construction that hadn't been articulated by the examiner. The question is, is the board allowed to do that? I mean, you know, in other words, let's suppose there's a question of anticipation. The examiner says, well, this thing is explicitly present in the prior art. The board comes in and says, no, it's not explicitly present in the prior art reference, but it's there inherently. Can the board do that? If the board moves, and in your hypothetical, my answer to that would be no. No? No, if the examiner says it's absolutely there, and then the board says, well, maybe it's not absolutely there, but it's inherent. If you're suggesting the change in the thrust of the rejection from an anticipation rejection that does not rely on inherency to one that does rely on inherency, it seems like in that situation that might amount to a new grounds of rejection and might allow an applicant the opportunity to present rebuttal evidence. Well, but I was trying to give you a hypothetical that didn't involve a new ground for rejection. Well, that But a different reasoning by the board. I mean, you seem to be agreeing with the appellant here. No, Your Honor, and let me be clear about this. The problem with saying that your hypothetical is not going to have a new grounds of rejection is that that premise in the hypothetical answers the question. If there's no new grounds of rejection, then the board did not open the door for So the board, if there's no new ground of rejection, the board can come up with new reasoning that wasn't present in the examiner's rejection. Yes, if it doesn't amount to a new grounds of rejection, the board can clarify or, if you will, come up with new reasoning, so long as the reasoning is in a different thrust. And let me explain why that's very important. The board sits at the top of the examining court. That's what this court said in In Re Alpat. The board is the final word from the USPTO on the patentability of the claims. And to fix examination with the very first office action and not allow anybody or anybody on behalf of the agency to change the position all the way up to this court simply makes no sense. The examiner, when they face an initial office action, they could have 10, they could have 100 claims in that application, all with multiple claim limitations. And to say, well, the examiner's got to go through it line by line, tell us what every single construction means. And if the examiner doesn't do that, then we'll be able to reverse that rejection at the federal circuit. Here what happened is the examiner made it perfectly clear what he was doing. The examiner did exactly what he's trained to do. He used column line numbers and figure reference numerals to take the very short claim, to take its limitations, to take the well charge level controller limitation, and to point exactly to the controller, that's the prior arts phrase, that controls the level of charge in the well. He couldn't have been more clear with what he was doing. The appellant came back, the applicant came back, he didn't say... But suppose he wasn't clear. Suppose he was unclear about what he was doing, and the board clarifies it. Can the board do that? Well, if he was unclear, Your Honor, and he didn't satisfy the 132 requirements, the prima facie case requirements... Well, that's what they're saying. They're saying that even if it's not a new ground of rejection, the board can't add anything to what the examiner says. If the examiner was unclear, the board can't make it clear. Well, certainly, first of all, the board can make it clear, and it's their obligation to do so. But if their doing so moves the rejection in a new direction, then that's a new ground of rejection. A new direction? I mean, what kind of test is that? I think it's important to look at what they actually argue. That's what they say was happening here, that it was moving in a new direction. It was not moving in a new direction. That's the whole point of the flaw in their argument. From their very first response to the very first office action, they said exactly what they said all the way through, even in response to the board. They said the claim term, well-charged level controller, is not found in the prior art. They made no allegation that they didn't understand the rejection. They made no allegation that the rejection had some shortcoming other than that shortcoming on the merits. That's precisely what they said. And in their brief to the board, that's what they said again. At page 290 of the record, which is where they specifically make their argument about independent claim one, it's an argument on the merits. It's an argument about clause C of independent claim one. They did not come out of the box and say to the examiner, you know what, we would like to respond with evidence. We would like to respond to your rejection, but we cannot. And the reason we cannot is we don't understand your rejection. If they had said that, then that's the sort of thing that the board could have reviewed on those terms. The board reviewed this case on the terms they presented to the board, which was the shortcomings of the reference. But they said it couldn't be found in the prior art. Right. Isn't that really a challenge to the PTO's rejection at that point? On the merits, it is, Your Honor. And they raised pseudcosurface, and this case is just like pseudcosurface, inasmuch as the challenge is the same. It's a claim construction challenge. And let me try to step back a little bit and talk about the prima facie case generally, because I think that the use of the term in different contexts and different opinions is a little confusing sometimes. Before you do that, suppose the examiner has one claim construction for the anticipation of rejection. The board says, well, that claim construction wasn't right. The broadest reasonable construction is this, but the result reached by the examiner is correct. Is there a problem with that? Within your hypothetical, I think that that could be a new grounds of rejection that would open the door and allow the... New grounds of rejection if they change the claim construction. If they change the claim construction enough so that there's a new thrust of the rejection, and that's the language that this Court uses, there's a new thrust of the rejection to the extent that it would have been unfair to them. So if they get a rejection from the examiner and they respond in one way, and then they go to the board and the board says, oh, let's put your response aside because we've got this new construction, and under the new construction it's also anticipated, they have a valid argument in that sense that they were denied an opportunity to ever respond to that situation. But that's not what happened here. The construction of the examiner, which is on the record, is the very same construction adopted by the board, and the construction is that a well charge level controller is something that controls the level of charge in a well. It's very straightforward and it's very simple. The board in this case, in several places, framed different issues in the following way. If you refer to page 11 of the board's opinion, it says the issue is, have appellants identified a reversible error in the examiner's findings that Kalitsky teaches in embodiment using a charged sink as required by Claim 2? I'm particularly interested in the first part of that. Have the appellants identified a reversible error in the examiner's findings? Is that the proper way to frame the issue before the board? Or is the question, is there substantial evidence to support the examiner's rejection? Well, I'm going to back away from the substantial evidence answer because that's the standard that this court would use. But the preponderance of the evidence standard is probably the right one, and the language that the board is using is a little troublesome because it suggests, I think, to a reader who's used to reading opinions from district courts that the board is looking for a showing of error of some kind. In fact, and the board clarified this in a recent in-bank decision of the board, in Ray Fry, a published decision, that said what we want applicants to do is we want them to tell us what the mistake is. They don't bear the burden of proving the mistake, but they do bear the obligation of identifying the mistake. And the board's role is to review the rejection anew and specifically review the issues raised by an appellant anew at the board stage. So we're not placing a burden on an appellant to prove the examiner wrong, but we are placing an obligation that an appellant for the regular administration of our proceedings to tell us what they think the problem is and why, and that the board reviews the decision. So your view is that the burden remains on the examiner to establish a basis for the rejection? The burden always remains on the office, yes, Your Honor. And to go back to what I was saying before, which is the use of prima facie case in different cases, there are... I mean, I read a lot of board decisions, and there are lots of times where the board says something that's different than what the examiner says. That's the nature of litigation, that issues get clarified, that something that seemed unimportant before becomes important. And I understand the idea that if it's a new ground to rejection, that's a problem. But short of a new ground for rejection, it seems to me you're still saying that the board can't go beyond the examiner's reasoning. Is that really the... No, and I hope I didn't suggest that in my answer to Judge Lynn. What I tried to say was that when an appellant raises an issue, they point to a part of the examiner's rejection, that the board reviews that anew. In doing that, the board can state its determination or assessment in its own words. It's not locked into the examiner's determination. But obviously the agency is the one that has to come up with the evidence. And the evidence here, the Kalnitsky reference, has been there all along, and there's no lack of clarity in how that reference is being used. But you're saying that the board can reinterpret that particular evidence and still not have a new ground for rejection. Absolutely, and the board has to do that, because hopefully in the brief to the board that Jung submits, hopefully there's some evolution of the issue from their very first response. That's why patent prosecution is so critical to district courts, because they can see the evolution of issues. And that's the same reason why an examiner shouldn't be obligated to construe every single claim limitation at the outset. That would be a waste of time. He would be focusing on terms that no one ever cared about. And most litigants, most applicants, wouldn't want the examiner to be doing that, because they might not be happy with how the examiner construes all 150. Would that be the duty of the board at that point? Well, the duty of the board is to respond to the issues as framed to the board by the applicant. And if the applicant says... In response to the examiner's position. Certainly. The examiner writes an examiner's answer. The appellant writes a board brief. And we'll take this case, for example. The examiner in the examiner's answer said, well charge level controller reads on Kalnitsky's controller because it controls the level of charge in the well. And the appellant came back and said, no, we use different words. And because we use different words, we win. And they're different. At the oral hearing, the board asked Jung's counsel repeatedly, what is it about your words, what is it about your specification that puts Kalnitsky's well charge level controller beyond the scope of your claims? And his answer was, nothing. It doesn't. We simply construe our claims in light of our example. The problem with that answer is that they have a claim drawn to the example and that claim is allowable over the prior. So their one non-limiting example is the subject of a claim, a patentable claim. So what are we left with? We're left with a very broad term that the examiner reasonably looked at and said, well, this reads on the same thing in this reference over here that seems to be doing the same thing. And counsel at the board hearing said, well, it's doing the same thing. It's just doing it in a slightly different way. If we agree with Mr. Jung and send it back to the PTO, would that be a second fight at the apple at that point? Well, it would be, Your Honor. And also, I don't know what would happen. I mean, I don't know what would come of it. The examiner twice, the board twice. We've made our position crystal clear and they seem to have made their position in response crystal clear. So I'm not sure what would happen on remand. And certainly, we don't want to create an incentive for an appellant to not put on this evidence that supposedly exists. I don't know what the evidence would be in the context of a one-up two-three rejection. Well, they have had their chance at the U.S. PTO to go through the whole process. They have appealed to this court and we submit that the board made no error. They responded to their appeal brief exactly on the merits in a very thorough decision. That's the decision of the agency. I don't see any room for a remand in this case. Thank you. Can I add one more thing? And I wanted to just speak for a second about the distinction between how prima facie cases used in some cases and in others. In some cases, like Chester v. Miller in Hyatt, in section 132 itself, as interpreted by this court, prima facie refers to the examiner's burden. In other cases, we're talking about evidentiary standards. And we talk about the prima facie nature of a reference. That's a different use of the phrase. And if there are no questions, we'll stand on the briefs. Thank you. Judge Dike, you asked the question, where did the board go wrong? Answer, they skipped over the prima facie case requirement and went right to the anticipation rejection. We're talking about a single claim term, an applicant-created claim term of well-charged level controller. The board dealt with that issue in the description requirement context, but even the board refused to look at the specification. The examiner in the answer provided the first construction of that claim term. The whole prima facie case rests on broadest, reasonable construction of claim terms. The well-charged level controller is recited in Claim 1 and Claim 27. Claim 27 has a lot of additional language concerning the functionality. The sweet spot that must be maintained by this invention in order to get the optimal response, that's the invention. It's the well-charged level controller as construed by the spec. So for the office to stand here and say that we're not entitled to Claim 1 or Claim 27 ignores those we cannot respond to office actions that are like to use his phrase, shooting arrows in the dark. We are shooting arrows in the dark. The Patent Office holds up the Kalnitzky reference in their rejections over and over again. They point to 340 in the Kalnitzky reference to construe the well-charged well controller. That's the way it's put in their office action. If they don't even get the term right and then they construe that term in light of the reference. That's very easy examination, Your Honor. You can always find it if you construe the claims without looking at the spec and look just at the reference. We say that the proper prima facie case requirement that this court needs to create by this case and others is that you have to have a broadest reasonable construction that's reasonable. There has to be evidence on the record linking any facial differences between that construction and the reference in order for applicants to be in a position to have notice to be able to respond. We don't want to create a record that's inappropriate and I don't think the office does either. We're not asking for a second bite at the apple. We're asking for the examination that we paid for and we should have received in the first place. If we send it back, what would be the proper examination? The proper examination, Your Honor, would be for the board to determine on the prima facie case requirement necessities for anticipation and then either the examiner can provide a sufficient prima facie case showing so that the burden shifts to us or the board can do that and then remand it back to the examiner. All we're asking for is clarity on what is the requirement for the prima facie case. Otherwise, if we do what the board did here, they're going to skip right over it, go right to the rejection on the merits and the prima facie case requirement for anticipation which is anticipation when compared to obviousness is the paramount form of obviousness. You don't have prima facie requirement for anticipation but you do for obviousness. That can't be the rule. Thank you, Mr. Stern. Case is submitted.